CHIASSON, Judge.
Guy W. Dupre sued his employer, Aquatic Equipment and Engineering, Inc. (Aquatic), and the employer’s insurer, The North-West Insurance Company (North-West), for workmen’s compensation. A judgment was rendered in Mr. Dupre’s favor and the employer and the insurer have taken this appeal. Aquatic and North-West, appellants, urge the following specifications of error:
1. The trial court erred in determining that plaintiff is continuously disabled because the plaintiff did not adduce legally sufficient proof to support his claim.
2. The trial court erred in determining that plaintiff is presently disabled within the meaning of the Louisiana Workmen’s Compensation Act.
3. The court erred in its determination of the wages earned by plaintiff subsequent to the accident. La.R.S. 23:1021.
4. The trial court erred in requiring defendants to pay undetermined and unspecified future medical expenses.
5. The court erred in finding that plaintiff’s anxiety problems were caused by the accident of April 13, 1976.
6. The trial court erred in awarding penalties and attorney’s fees.
We affirm the judgment of the trial court and adopt as our own the trial court’s statement of the case, findings of fact and conclusion of law contained in its reasons for judgment, as follows:

“The plaintiff, Guy W. Dupre, sues as an alleged employee of Aquatic Equipment and Engineering, Inc., suing both defendants, requesting the court to adjudicate that the plaintiff is totally and permanently disabled as contemplated under the Louisiana Workmen’s Compensation Act and, as such, entitled to the maximum rate of compensation allowable for the rest of his natural life together with legal interest from date of judicial demand.
“He also prays for all medical expenses incurred by the plaintiff for his treatment presently and in the future. He seeks an award of damages, penalties and attorney’s fees alleging defendants’ arbitrary and capricious refusal to pay workmen’s compensation benefits.
“The plaintiff seeks recovery of penalties of 12% of the amount of compensation benefits withheld to the date of filing supplemental petition, July 10, 1978 and for all compensation benefits amounts withheld in the future and for reasonable attorney’s fees and costs.
“Evidence was introduced and the trial completed. Considering the law and the evidence, the argument and memorandum of counsel and the court finding that the plaintiff has proved by a preponderance of the evidence the following: On or about April 13,1976, in the State of Louisiana, the plaintiff was employed by Aquatic Equipment and Engineering, Inc. as a material hustler or material foreman and that the nature and extent of such occupation and employment was hazardous within the meaning of the Louisiana Workmen’s Compensation Act; and while plaintiff was so *626 employed and acting within the scope and course of his employment with the defendant employer the plaintiff collided headfirst into a steel beam or pipe protruding across the platform stairway, causing plaintiff personal injuries, pain and suffering and medical expenses and causing him personal injuries to his upper and lower back which rendered the plaintiff to be partially disabled from doing work and causing him to be in need of continuous medical treatment, services and attention and to be presently in need of medical treatment, services and attention.
“The court finds that the plaintiff has proved by a preponderance of the evidence that he suffered injuries to the back of her cervical spine area, causing a ruptured in-tervertebral disc in the C5-6 area, in remedy of which there was surgical discectomy and fusion, rendering him partially disabled from doing labor or work which required jumping, climbing or doing continuous heavy lifting types of jobs, which disability could, with the passage of time, eventually become zero percent functionally disabled. That in the meantime re-training for jobs requiring alternate sitting and standing, alternate walking and some modest lifting (not over 30 pounds) and some modest riding activities were required.
“The court finds that the plaintiff has also proved by a preponderance of the evidence and clearly that on April 13, 1976 he also suffered injury to his lower back and particularly in the lumbar area in the vicinity of the L-5 or S-5 vertebrae, with muscle spasm and lumbar strain; that the injury in this area was also disabling and is continuing. That while this painful condition was being examined by medical specialists. Said specialists were not given the opportunity to make medical diagnosis and to provide conservative and/or surgical remedy and they have not been able to provide any medical diagnosis as to any other or worse condition in this area by reason of the refusal of the defendants to provide for payment of hospital, medical and all other associated and needed costs to provide for such and because of the personal financial inability of the plaintiff to do so.
“The court finds that the plaintiff has proved by a preponderance of the evidence and clearly that there are injuries to the plaintiff sustained by him April 13, 1976 to his lower back caused by this occupational accident, the exact nature and extent of which is undetermined and that such has been interrupted by the failure of the defendants to provide the hospital, medical and other necessary costs to do so.
“In the meantime, the plaintiff has proved that there is an injury and disability occasioned by the injury to his lower back area, the exact nature and extent of which is yet undetermined but that it is at least rendering him partially disabled reserving to the plaintiff, in the event the tests and/or surgery and ultimate results should prove another type or degree of disability to in these or subsequent proceedings urge such and demand appropriate remedies and compensation therefore, together with legal interest, costs and, if applicable, penalties and attorney’s fees.
“The defendants urge that the limitations of activity expressed by plaintiff’s medical witnesses are compatible with the activity requirement of plaintiff in his job as material hustler with Aquatic Equipment and Engineering, Inc., at the time of the injury, April 13,1976, and since. Such defendant’s witness stated in substance that the company required no climbing, no jumping, no lifting for the job of material hustler or foreman — that the job is merely and purely supervisory; that the plaintiff and any other person occupying the job of material hustler or foreman is totally supervisory requiring him only to direct laborers to climb, jump, pick up pipe personally or with mechanical devices. However, this same witness, an official of the defendant company, added that the requirements of other companies may require that the foreman physically help the men under him by climbing, picking up and lifting, etc. Against this is the testimony of the plaintiff that in the performance of his duties he found it necessary to climb the ladder and he struck his head against the obstruction.
*627 “The court feels that what the employee did in the course of his work at the time of his injury is a more reliable description of his job duties than the job duty description given by an officer of the company after the fact of the accident.
“The plaintiff has proved by a preponderance of the evidence that the job occupied by him with the defendant company and required by other similar companies at the time of the accident and presently requires of the material hustler or foreman some climbing, some jumping, some lifting, some help to the laborers and that the job requires closer supervision which requires some climbing and jumping.
“The court finds that the plaintiff’s present state of injuries produced partial disability of plaintiff to perform the duties in which he was customarily engaged when injured and duties of the same or similar character, nature or description for which he was fitted by education, training and experience and that these injuries and disabilities were caused by the occupational accident which occurred on April 13, 1976 while employed within the course and scope of his employment with the defendant, Aquatic Equipment and Engineering, Inc. The plaintiff is therefore entitled to receive sixty-six and two-thirds (66⅜%) percentum of the difference between the wages he was earning at the time of the injury and any lesser wages which he actually earns in any week thereafter in any gainful occupation for wages but not beyond a maximum of four hundred (400) weeks and not to exceed a rate of Eighty-five and no/100 ($85.00) Dollars per week.
“The plaintiff has proved by a preponderance of the evidence that at the time of the accident he was earning $7.75 per hour. His testimony is that he earned about $600.00 per week. However, the court received no cooberative (sic) evidence of overtime. The plaintiff has proved employment of at least forty (40) hours per week at $7.75 per hour or a total of $310.00 per week gross.
“According to defendant exhibit 9 and defendant exhibit 10 plaintiff’s income from October 8, 1977 inclusive of June 29, 1978 totals $4,789.38. This covers a period of 38 weeks which results in an average of $126.03 per week.
“The difference between what he was earning at the time of the accident ($310.00 per week) and the average weekly wage during the period from October 8, 1977 through and including June 29, 1978 ($126.03) is a difference of $183.97 per week. Sixty-six and two-thirds (66⅜%) percent of this difference is $122.65 average per week. Since this exceeds the maximum provided by law the maximum of $85.00 per week applies.
“Because some of the expenses to the plaintiff were anxiety related it is necessary to explore whether or not those expenses are also owed by the defendants.
“Because of the entry of Mr. Guy W. Dupre in the Lakewood Hospital March 12,1976 on conditions which he feared to be a heart attack, but diagnosed as anxiety, and because the Lakewood Hospital entry of March 30, 1977 and the Ochsner Hospital entry of April 10, 1977 were because of anxiety, the question arises to whether or not the anxiety of the last two items were caused and/or aggravated by the accident which occurred on April 13, 1976.
“It is proved by a preponderance of the evidence that the plaintiff had a disposition towards anxiety at the time of the accident as witness his entry into the Lakewood Hospital March 12, 1976.
“Dr. Charles Kelso Billings in his deposition, page 37, states: ‘_ I think that the probable resulting chest pain from his anxiety probably was a result of all that he had been through the previous year.’
“The court finds that the plaintiff, when injured on April 13, 1976 had a condition to be subject to anxiety and that the accident and personal injuries and subsequent necessary operations and medical treatment suffered by the plaintiff therein caused such anxiety condition to be enhanced and aggravated.
“The court finds that it is proved by a preponderance of the evidence that the defendant paid to the plaintiff workmen com *628 pensation payments weekly at a rate of $85.00 per week until May 28,1978 and that no compensation or other payments have been made to the plaintiff since that time and that the defendants refuse to do so. “It has been proved by a preponderance of the evidence that the defendants have ceased providing further medical expenses and refuse to pay any outstanding medical treatment cost incurred but not paid and which unpaid medical expenses are as follow to-wit:
1. Tulane Medical Center Hospital, New Orleans, Louisiana (P-11) $1,024.80
2. Tulane Medical Center, New Orleans, Louisiana (P-12) $ 188.00
3. Medical Arts Pharmacy, Morgan City, Louisiana (P-13) $ 634.53
4. Tulane University Medical School, (Drs. Correa & Amilcar) (P-14) $2,915.00
5. Ochsner Foundation Hospital, (P-15) $ 934.35
6. Lakewood Hospital, Morgan City, Louisiana (P-16) $1,760.55
7. Lakeside Laboratory, Inc., Morgan City, Louisiana (P-17) $ 36.00
8. Acadian Ambulance Service, Inc., Lafayette, Louisiana (P-18) $ 219.00
9. Drs. Fortenberry, Hurwitz, Willes & Boothe, New Orleans, La. (P-19) $ 100.00
TOTAL UNPAID BUT DUE MEDICAL DEBTS $7,812.23
“The court finds that the plaintiff has been and is now in need of further medical examination, diagnosis and medical remedies and treatment caused by the injuries received by him in the employment-related accident on or about April 13, 1976.
“The following costs for depositions, and expert witness fees incidental and necessary to this lawsuit, the costs of which were advanced by Krebs & Versaggi and/or Victor Versaggi, are hereby fixed and taxed as costs:
1. Associate Reporters, $ 265.05 New Orleans, Louisiana (P-20)
2. Raeburn C. Llewellyn, M.D., $ 250.00 (P-21)
3. Affiliated Reporters, Inc., $ 92.70 New Orleans, Louisiana (P-22)
4. Amilcar J. E. Correa, M.D., $ 25.00 Medical Conference (P-23) _
TOTAL $ 632.75
“The court further finds that the defendant in ceasing to make continued compensation benefit payment on May 28, 1978 and in ceasing to provide medical treatment and medical care or to pay such medical treatment and medical care costs which it ceased to do on May 28,1978 did so without probable cause and in doing so acted arbitrarily and capriciously.”
We find the facts to be amply supported by the record and hold that the trial court committed no error in its determinations.
We shall discuss appellants’ specification of error number three in more detail. Appellants argue that the method by which the trial court determined compensation amounts for the period of time worked subsequent to the accident is incorrect.
The trial judge, having found the appel-lee partially disabled, was bound to apply the following statutory provision in determining compensation:
La.R.S. 23:1221(3) provides:
“For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maxi *629 mum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976.” (Emphasis by the court.)
Appellants contend the appellee actually earned during several separate weeks an amount which under the formula would not entitle him to any compensation for those particular weeks. Their argument is that the trial court erred in averaging the appel-lee’s commissions over the period of time rather than considering the commissions as received on a week to week basis.
Under La.R.S. 23:1021(7) wages are defined as follows:
“ ‘Wages’ means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by four; (c) If the employee is employed at an annual salary, his annual salary divided by fifty-two; and (d) If the em-. ployee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.” (Emphasis by the court.)
There is no definition of wages in the statute for wages earned after the time of injury. However, we find that by analogy the definition of wages in La.R.S. 23:1021(7) could be applied to wages subsequent to the time of injury.
Under La.R.S. 23:1021(7), if an employee is employed on a commission basis, his average weekly wage at the time of the accident is computed as follows:
“. . . (H)is (the employee’s) gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.”
This formula is a method of averaging to determine weekly wages earned on a commission basis.
In the instant case there was evidence introduced only on the gross earnings of commissions earned during a thirty-eight week period and there was no evidence introduced as to the actual number of days the employee worked during any of the thirty-eight weeks. The appellee did not appeal nor did he answer the appeal.
The trial court took the total amount of commissions earned by the appellee from October 8, 1977 to June 29, 1978, which was $4,789.38 and divided this amount by the number of weeks involved (in this case 38 weeks), which resulted in an average weekly wage actually earned of $126.03 per week. Based upon the facts of this case, this was a proper method for the trial court to use to determine average weekly wage.
We believe the averaging method to be correct because had appellee earned commissions as salary prior to the time of injury, his average weekly wage would have been computed as provided in La.R.S. 23:1021(7). This basic method of averaging should also hold true for the computation *630 after the time of injury. In the instant case appellee earned hourly wages prior to the accident and commissions subsequently. In order to properly compute the formula as specified in La.R.S. 23:1221(3), we believe it is necessary to analogize the determination of weekly wages of commissions for the time period subsequent to the accident to a similar determination of weekly wages of commissions prior to the accident.
We recognize that La.R.S. 23:1221(3) provides for a determination of any lesser wages the employee actually earns in any week subsequent to the accident. However, this statute does not provide for a calculation of how actually earned wages are determined if the employee is on a commission basis. Further, wages is defined by statute to mean average weekly wages. La.R.S. 23:1021(7), supra. We believe by analogizing to the averaging method provided in La.R.S. 23:1021(7) the actual wages of the employee contemplated by La.R.S. 23:1221(3) can be determined by finding the average weekly wage appellee earned in commissions during the thirty-eight weeks he worked subsequent to the accident. Since sixty-six and two-thirds (66⅜%) per centum of the difference between the wages earned at the time of the injury and wages earned subsequent to the injury exceeds the maximum provided by law under La.R.S. 23:1202(1) which is $85.00 per week, Dupre is entitled to $85.00 per week for the time period involved.
We are aware of the decision in LeBlanc v. Commercial Union Assur. Co., 349 So.2d 1283 (La.App. 1st Cir. 1977), writ refused, 351 So.2d 174 (La.1977); however, we do not believe our findings are inconsistent with this decision.
For the reasons given above the judgment of the trial court is affirmed. Costs of this appeal are to be assessed against appellants.
AFFIRMED.